## THE STEWART-PECK SAND COMPANY v. PETER REYBER.

### No. 12,882. (71 Pac. 242.)

#### SYLLABUS BY THE COURT.

PERSONAL INJURIES— *Accident on River —Insufficient Defenses.*
Where a sand company navigating a line of steamboats upon a
river agrees with a bridge company that is intending to bridge
the river that if the latter, in its temporary work, will leave an
opening of a certain width between its pilings it will navigate its
boats through such opening, and the opening is left, and the sand
company navigates its boats through such opening for some weeks,
but, thereafter, with knowledge of all facts and without previous
notice or excuse, runs one of its boats past the structure at a
place other than that left for it and so close to the shore as to
break the guy-ropes supporting a large derrick in use in erecting
the bridge, causing it to fall upon, and injure, one of the employees
on the bridge, it is no defense, in an action by such employee, that
the river is navigable and the bridge company had not secured
permission from the secretary of war.

Error from Wyandotte district court; E. L. FISCHER,
judge. Opinion filed January 10, 1903. Affirmed.

*Johnson & Lucas*, and *Miller, Buchan & Morris*, for
plaintiff in error.

*C. W. Trickett*, for defendant in error.

The opinion of the court was delivered by

GREENE, J.: The Blodgett Bridge and Iron Com-
pany was erecting a bridge over the Kansas river
under a contract with the Kansas City Stock-yards
Company. Peter Reyber, the plaintiff below, was an
employee of the iron company working on the structure.
The defendant below was operating sand boats up and
down the river past the place where the bridge was
being erected. Preparatory to the erection of the
bridge it became necessary to drive several rows of

temporary piles in the river, from one side to the other. The person in charge of the bridge had an understanding with the defendant that an opening of thirty to forty feet between certain rows of piers would be sufficient for it to operate its boats, and, in accordance with such understanding, an opening of thirty-four feet was left in the main current of the stream for the accommodation of the sand company.

On the day of the accident the plaintiff was at work on one of the bridge piers on the north side of the river, near a derrick secured by three guy-ropes. One of these ropes was stretched directly across the river, one up, and the other down and across the river. . On the side where they were fastened they were so near the surface of the water that boats could not pass under them. On the day of the accident the sand company, while navigating one of its boats past the place where the workmen were engaged on the bridge, left the opening between the temporary piles, through which it could have run its boats with safety, and ran so close to the opposite side as to break all three of the guy-ropes, causing the derrick to fall upon plaintiff. For the injury thus sustained he recovered judgment.

The principal contention of the defendant is that the Kansas river is a navigable stream ; that neither the bridge company nor the Kansas City Stock-yards Company had authority to erect a bridge over the river without first obtaining permission therefor from the secretary of war, as provided in section 7, chapter 158, U. S. Statutes at Large, 1891–'93, and that, as neither had procured such permission, the bridge company and its employees were trespassers, and plaintiff owed such employees no duty, except to refrain from

wantonly, wilfully or maliciously injuring them. The said statute reads :

"That it shall not be lawful to build any wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty or structure of any kind outside established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without permission of the secretary of war, in any port, roadstead, haven, harbor, navigable river, or other water of the United States, in such manner as shall obstruct or impair navigation, or anchorage of said waters ; and it shall not be lawful hereafter to commence the construction of any bridge, bridge draw, bridge piers and abutments, causeway, or other works over or in any port, road, roadstead, haven, harbor, navigable river or navigable waters of the United States, under any act of the legislative assembly of any state until the location and plan of such bridge or other works have been submitted to and approved by the secretary of war, or to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of any port, roadstead, haven, harbor of refuge, or enclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless approved and authorized by the secretary of war."

Whether the Kansas river is a navigable stream, or whether either company had authority to engage in erecting the bridge in question without obtaining permission as contemplated by the statute cited, is not material, and is not decided in this case. The evidence strongly supports the claim of the plaintiff that prior to the commencement of the erection of the bridge it was agreed that the bridge company would leave defendant an opening of thirty to forty feet between the rows of piles through which it could navigate its boats. The bridge company left the opening. For several weeks after the piles were

driven and the derrick erected, and while the men were working, the defendant navigated its boats through such opening without objection. It knew at the time of the accident, and had known for many days prior thereto, that men were working on the bridge. It knew the location of the derrick and that it was secured by guy-ropes stretched across the river, and that, if it left the opening and ran its boats near the east bank, it would come in contact with the ropes supporting the derrick, and that the breaking of these ropes would cause the derrick to fall and danger might result to the workmen. Notwithstanding, it left the unobstructed opening through which it might have run its boats in safety, and, without notice or other warning, ran so near the opposite bank as to break the guy-ropes, causing the derrick to fall upon the plaintiff. Conceding that the bridge company and its employees were engaged in bridging a navigable river without permission from the secretary of war, this did not give the defendant a license wantonly to break these guy-ropes and precipitate the derrick upon the workmen.

Contention is made that the court erred in refusing to instruct the jury that if the wind blew the boat of defendant against the guy-ropes at a time when the defendant's servants were exercising ordinary care the plaintiff could not recover. There was no substantial evidence fairly tending to support such an instruction. While there was some testimony that a wind had been blowing for a week and it was more difficult to manage a boat when the wind blew than when calm, there was no testimony offered tending to prove that, by reason of the wind, the boat became unmanageable and was driven from its course and

under these ropes with such rapidity as to break them.

The judgment of the court below is affirmed.

All the Justices concurring.